UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EARL HAYES,

                                    Plaintiff,

        v.

BRADY CONDLIN, *et al.*,

                                    Defendants.

No. 22-CV-7295 (KMK)

OPINION & ORDER

<u>Appearances:</u>

Earl Hayes
Teaneck, NJ
*Pro Se Plaintiff*

Jennifer L. Goltche, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants Brady Condlin and Steven Schmoke*

Wesley Eugene Bauman, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Interested Party New York State Office of the Attorney General*

KENNETH M. KARAS, United States District Judge:

        Plaintiff Earl Hayes ("Plaintiff"), proceeding pro se, brings this Action against

Defendants Brady Condlin ("Condlin") and Steven Schmoke ("Schmoke") of the New York

State Police (collectively "Defendants"), under 42 U.S.C. § 1983, alleging that Defendants

subjected him to an unconstitutional search and seizure, false arrest, and malicious prosecution.

(*See generally* Compl. (Dkt. No. 1).)  In addition, Plaintiff seeks to have New York State

cigarette taxes declared unconstitutional and requests injunctive relief from the enforcement of

these taxes.  (*See id.*)  Before the Court is Defendants' Motion to Dismiss ("Motion") Plaintiff's

Complaint in its entirety.  (*See* Not. of Mot. (Dkt. No. 13).)  For the foregoing reasons, the

Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Complaint and associated filings, all of

which are assumed to be true for the purpose of resolving the instant Motion.  *See Div. 1181*

*Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94

(2d Cir. 2021) (per curiam).

On April 19, 2021, at approximately 4:45pm, Plaintiff was driving a rental car on the

Taconic State Parkway at approximately fifty miles per hour, when he was stopped by Condlin.

(Compl. at 4.)  Condlin approached Plaintiff's vehicle and requested his license, registration, and

insurance.  (*Id.*)  Plaintiff provided those items to Condlin, who took them back to his patrol

vehicle.  (*Id.*)  Shortly thereafter, Condlin returned to Plaintiff's car and told him that he smelled

burned marijuana coming from inside Plaintiff's car.  (*Id.*)  Plaintiff denied this.  (*Id.*)  Defendant

Condlin then directly asked Plaintiff whether he was smoking marijuana, which Plaintiff also

denied.  (*Id.*)

Condlin then asked Plaintiff to exit his car, and he was subjected to a pat-down search of

his person, and then a more intrusive search of his pockets.  (*Id.*)  Condlin discovered that

Plaintiff was in possession of $5,100 but did not find any contraband or evidence of any crime

from this search.  (*Id.*)

After the money was recovered, Condlin ordered Plaintiff to his patrol vehicle and locked

Plaintiff in the back seat.  (*Id.*)  Condlin went back to Plaintiff's vehicle and conducted a search

of the inside of Plaintiff's car.  (*Id.* at 5.)  During the course of the search, Condlin opened the

trunk and recovered a locked medium-sized backpack.  (*Id.*)  Despite repeated demands, Plaintiff refused to tell Condlin what the backpack contained or where the key to open the lock was located.  (*Id.* at 5–5A.)  Condlin then removed Plaintiff from the patrol vehicle and searched Plaintiff again.  (*Id.* at 5A.)

When this second search failed to produce the key, Condlin placed Plaintiff into the back seat of the patrol car and locked Plaintiff inside again.  (*Id.*)  Condlin returned to Plaintiff's vehicle and searched the interior a second time.  (*Id.*)  Condlin continued to search Plaintiff's car until he found the key that unlocked the backpack.  (*Id.*)  Condlin recovered a set of keys within the car, and upon opening the backpack, Condlin discovered, by Plaintiff's estimation, "four and one-half pounds of high-grade marijuana."  (*Id.*)  Condlin seized the marijuana along with several large, black, opaque plastic bags containing ninety-five cartons of cigarettes.  (*Id.*)

Plaintiff was arrested and brought back to the State Police barracks in Wappingers Falls, New York, where Condlin administered several field sobriety tests, all of which Plaintiff passed. (*Id.*)  Plaintiff was issued a Desk Appearance Ticket for a tax offense related to the recovered cigarettes, marijuana possession, and issued traffic citations for speed and lane violations and released from the precinct.  (*Id.*)

After his release, Plaintiff was required to appear in East Fishkill Town Court approximately once per month for a year to answer the charges against him.  (*Id.*)  Each time Plaintiff appeared in Court he was threatened with imprisonment and pressured to accept a plea offer which would require him to plead guilty to the traffic offenses and forfeit all of the property seized, including the cash.  (*Id.*)

Eventually, in April 2022, all of the charges against Plaintiff were dismissed.  (*Id.*)  Once the charges were dismissed, the money that had been seized from Plaintiff was returned to him, but the rest of Plaintiff's property was retained by law enforcement.  (*Id.*)

Plaintiff later discovered that it was Schmoke who served as the affiant on the criminal court complaint, which included the tax offense, notwithstanding the fact that he did not have any direct knowledge of the facts of Plaintiff's encounter with Defendant Condlin.  (*Id.* at 5A–5B.)

B.  Procedural History

On August 25, 2022, Plaintiff filed his Complaint.  (*See generally id.*)  In addition to his other causes of action, Plaintiff requested a preliminary injunction "enjoining all law enforcement officers in New York from enforcing the State's cigarette tax law while this litigation is pending."  (*See id.* at 5).  The injunction was denied without prejudice to renewal at a later time, on September 19, 2022.  (Dkt. No. 4).

On January 13, 2023, Defendants requested an extension of time to file their answer or otherwise respond, (*see* Dkt. No. 6), which the Court granted on January 17, 2023, (*see* Dkt. No. 7).  On March 20, 2023, Defendants filed a pre-motion letter to request a pre-motion conference in anticipation of a Motion to Dismiss.  (*See* Dkt. No. 10.)  Defendants also requested to stay discovery while the Motion to Dismiss was pending.  (*See id.*)  On April 4, 2023, in lieu of scheduling a pre-motion conference, the Court set a briefing schedule for the Motion to Dismiss and stayed discovery until further order of the Court.  (*See* Dkt. No. 11.)

On May 9, 2023, Defendants filed their instant Motion.  (*See* Not. of Mot.; Mem. of Law in Supp. of Defendants' Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 14).)  Plaintiff filed an Opposition on June 12, 2023.  (*See* Mem. of Law in Opp. to Defendants' Mot. to Dismiss ("Pl.'s

Opp.") (Dkt. No. 15).)  On June 30, 2023, Defendants filed their Reply.  (*See* Reply Mem. of Law in Further Supp. of Defendants' Mot. to Dismiss ("Defs.' Reply") (Dkt. No. 17).)

## II.  Discussion

### A.  Standard of Review

#### 1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Gunn v. Malani*, No. 20-CV-2681, 2023 WL 2664805, at *3 (S.D.N.Y. Mar. 28, 2023) (quoting *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014)).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks and citation omitted), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (internal quotation marks and citation omitted)).

The Second Circuit has explained that a challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1) may be facial or fact-based.  *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden" and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (alterations adopted) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).  In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor. *Id.* at 57.  However, where a Rule 12(b)(1) motion is fact-based and a

defendant proffers evidence outside the pleadings, a plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial.  *See Katz v. Donna Karan Co.*, LLC, 872 F.3d 114, 119 (2d Cir. 2017).  If the extrinsic evidence presented by the defendant is material and controverted, the Court must make findings of fact in aid of its decision as to standing.  *See Carter*, 822 F.3d at 57.

2.  Rule 12(b)(6)

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.*  (alteration adopted) (internal quotation marks and citation omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed."  *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-

6

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same). But when a plaintiff proceeds pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted). Moreover, where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it]

suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted).  Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics omitted) (internal quotation marks and citation omitted)).

B.  Analysis

Construing Plaintiff's Complaint liberally and interpreting it to raise the strongest arguments that it suggests, *Sykes*, 723 F.3d at 403, Plaintiff brings Section 1983 claims for an unconstitutional search and seizure, false arrest, and malicious prosecution.  (*See* Compl. at 4–5B.)  In addition, Plaintiff seeks to have New York State cigarette taxes declared unconstitutional and requests injunctive relief from enforcement of these taxes.  (*See id.* at 5.)

The Court first assesses Plaintiff's Section 1983 claims, and then turns to his request for declaratory and injunctive relief regarding New York State cigarette taxes.  The Court will consider Defendants' corresponding arguments to the extent necessary to resolve the Motion.

1.  Section 1983 Claims

Plaintiff brings Section 1983 claims for an unconstitutional search and seizure, false arrest, and malicious prosecution against Defendants Condlin and Schmoke in their official and individual capacities.  (*See* Compl. at 4–5B.)  Defendants argue that Plaintiff cannot bring his claims against Defendants in their official capacities because such claims are barred by the Eleventh Amendment.  (*See* Defs.' Mem. at 7–8.)  As for the claims against Defendants in their

individual capacities, Defendants contend that the claims cannot survive as against Schmoke because Plaintiff does not plead his personal involvement in any of the alleged constitutional violations.  (*See id.* at 11–13.)  Moreover, Defendants assert that the claims cannot survive as to either Schmoke or Condlin because both Defendants are entitled to qualified immunity.  (*See id.* at 13–15.)  The Court addresses each of these arguments in turn.

### a.  Eleventh Amendment

The Eleventh Amendment bars suits by individuals against a state in federal court without that state's consent.  *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267–68 (1997).  This principle of sovereign immunity extends to state agencies.  *See McGinty v. New York*, 251 F.3d 84, 95 (2d Cir. 2001); *accord Mancuso v. N.Y. State Thruway Auth.*, 86 F.3d 289, 292 (2d Cir. 1996); *Owens v. Coughlin*, 561 F. Supp. 426, 428 (S.D.N.Y. 1983).  New York has not consented to being sued in federal court.  *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38–40 (2d Cir. 1977) (noting that New York State has consented only to being sued in the New York Court of Claims); *Lyerly v. Phillips*, No. 04-CV-3904, 2005 WL 1802972, at *3 (S.D.N.Y. July 29, 2005) (noting that the agency now known as the New York Department of Corrections and Community Supervision ("DOCCS") is immune from federal lawsuits); *Bryant v. N.Y. State Dep't of Corr. Servs. Albany*, 146 F. Supp. 2d 422, 425 (S.D.N.Y. 2001) (noting that it is "beyond dispute" that New York and its agencies have not consented to being sued in federal court (internal quotation marks and citation omitted)).

Further, while, in some instances, Congress may abrogate a state's sovereign immunity, *see, e.g.*, *United States v. Georgia*, 546 U.S. 151, 158–59 (2006); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976), Congress did not do so in Section 1983, *see Haywood v. Drown*, 556 U.S. 729, 74 n.4 (2009) ("[A] plaintiff seeking damages against [a] State . . . cannot use [Section] 1983 as a vehicle for redress because a State is not a 'person' under [Section] 1983."); *Will v. Mich. Dep't*

*of State Police*, 491 U.S. 58, 66 (1989) ("Congress, in passing [Section] 1983, had no intention to disturb the States' Eleventh Amendment immunity. . . ."); *Fitzpatrick*, 427 U.S. at 452 ("[Section 1983] could not have been intended to include States as parties defendant."); *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (affirming dismissal of Section 1983 action for damages against state employees in their official capacities on sovereign immunity grounds); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 429 (S.D.N.Y. 2010) (noting that the Eleventh Amendment bars federal lawsuits seeking damages under Section 1983 against state entities).

Accordingly, any damages claim against Defendants in their official capacities is considered a damages claim against New York State itself, and therefore, must be dismissed. *See Kentucky v. Graham*, 473 U.S. 159, 169–70 (1985) (explaining that the Eleventh Amendment bars a damages action against State officials sued in their official capacity); *Adams v. Annucci*, No. 17-CV-3794, 2018 WL 4608216, at *1 n.1 (S.D.N.Y. Sept. 25, 2018) (dismissing claim against Annucci in his official capacity on Eleventh Amendment grounds).

### b.  Personal Involvement

Next, Defendants argue that Plaintiff cannot bring any claim against Schmoke in his personal capacity, because the Complaint fails to allege Schmoke's personal involvement in any constitutional violation.  (*See* Defs.' Mem. at 11–13.)  The Court disagrees.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under [Section] 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F. 3d 133, 138 (2d Cir. 2013).  To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who

committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (emphases, internal quotation marks, and citation omitted)).  In other words, "[b]ecause vicarious liability is inapplicable to . . . [Section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Here, Plaintiff alleges as to Schmoke that he "had sworn out the Felony Complaint, accusing Plaintiff of committing the tax offense, even though Defendant Schmoke did not have any direct knowledge of the facts and circumstances surrounding Plaintiff's encounter with Defendant Condlin." (Compl. at 5A–5B.)  Although this is the only reference to Schmoke in the Complaint, the Court determines that such an allegation is sufficient to demonstrate Schmoke's personal involvement with regard to *a potential* malicious prosecution claim.  *See Rounseville v. Zahl*, 13 F.3d 625, 628 (2d Cir. 1994) ("[D]efendants swore out an accusatory instrument, which would appear under New York law to satisfy the requirement that the defendants' initiated a criminal proceeding against [plaintiffs].");  *see also Struthers v. City of New York*, No. 12-CV-242, 2013 WL 2390721, at *10 (E.D.N.Y. May 31, 2013) (holding that plaintiff had satisfied first element of a malicious prosecution claim, initiating a prosecution against plaintiff, where defendant "swore out the criminal complaint" charging defendant).[1]

---

[1] To be clear, although the Court determines that Plaintiff has pled Schmoke's personal involvement in a potential malicious prosecution claim, this does not mean that Plaintiff has successfully pled all the requisite elements of such a claim.  Because Schmoke does not argue in the briefing that Plaintiff fails to state a claim, and instead just asserts that Schmoke was not personally involved in Plaintiff's alleged malicious prosecution, and in the alternative is entitled to qualified immunity on this claim, (*see* Defs.' Mem. at 11–15), the Court does not decide whether Plaintiff has adequately alleged malicious prosecution against Schmoke.  Instead, having decided that Schmoke was personally involved in a potential malicious prosecution

However, to the extent Plaintiff alleges a search and seizure and false arrest claim against Schmoke as well, such claims cannot survive as against him.  Plaintiff does not provide a single factual allegation indicating that Schmoke was involved in the alleged search and seizure or false arrest of Plaintiff.  (*See* Compl.)  In fact, Plaintiff states that "Defendant Schmoke did not have any direct knowledge of the facts and circumstances surrounding Plaintiff's encounter with Defendant Condlin," (*id.* at 5A–5B), confirming that Schmoke was not involved.  Therefore, Plaintiff cannot maintain a search and seizure or false arrest claim against Schmoke.  *See Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023) (holding that "[t]he district court properly dismissed the claims against [defendants] because [plaintiff] could not identify admissible evidence that the [defendants] were personally involved in the alleged deprivation of [plaintiff's] rights"); *Pellecier v. Marti*, No. 21-CV-4287, 2024 WL 343973, at *4 (E.D.N.Y. Jan. 30, 2024) (dismissing false arrest, false imprisonment, and malicious prosecution claims against defendant where there was no evidence in the record that defendant personally participated in any of the events about which plaintiff was complaining).

In sum, on the basis of personal involvement, the search and seizure and false arrest claims are dismissed against Schmoke, but the malicious prosecution claim survives.

### c.  Qualified Immunity

Finally, Defendants argue that Plaintiff cannot bring any Section 1983 claims against Schmoke or Condlin in their personal capacities because both Defendants are entitled to qualified immunity for their action.  (*See* Defs.' Mem. at 13–15.)

A police officer or other government official will be protected from liability for his discretionary actions by the doctrine of qualified immunity "where '(1) his conduct does not

---

against Plaintiff, the Court will go on to decide whether Schmoke is entitled to qualified immunity on this claim.

violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act.'"  *Delgado v. City of New York*, No. 19-CV-6320, 2023 WL 6390134, at *7 (S.D.N.Y. Oct. 2, 2023) (quoting *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007)); *see also Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001) (same).  Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and it protects "all but the plainly incompetent or those who knowingly violate the law."  *City & County of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)); *see also Bangs v. Smith*, 84 F.4th 87, 101 (2d Cir. 2023) (same); *Murphy v. City of Elmira*, No. 18-CV-6572, 2023 WL 5938777, at *10 (W.D.N.Y. Sept. 12, 2023) (same).  "Because qualified immunity is 'an affirmative defense that reflects an immunity from suit rather than a mere defense to liability, it is appropriate to decide the issue of qualified immunity, when raised, at an early stage of the litigation, such as when deciding a pre-answer motion to dismiss.'"  *Drayton v. Young*, No. 17-CV-5440, 2018 WL 5831324, at *5 (S.D.N.Y. Nov. 7, 2018) (alterations adopted) (quoting *Betts v. Shearman*, No. 12-CV-3195, 2013 WL 311124, at *4 (S.D.N.Y. Jan. 24, 2013), aff'd, 751 F.3d 78 (2d Cir. 2014)).

"In the case of allegations to which probable cause is a complete defense, such as false arrest or imprisonment, the Second Circuit has defined the standard of qualified immunity as one of 'arguable probable cause.'"  *Betts*, 2013 WL 311124, at *4 (quoting *Cerrone*, 246 F.3d at 202); *see also Sentementes v. Lamont*, No. 20-CV-1826, 2023 WL 1818544, at *6 (D. Conn. Feb. 8, 2023) (same); *Kosmidis v. Port Auth. Of N.Y & N.J.*, No. 18-CV-8413, 2021 WL

4442812, at *3 (S.D.N.Y. Sept. 28, 2021) (same).[2]  "Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed." *Aurecchione v. Falco*, No. 22-CV-4538, 2023 WL 6255529, at *10 (S.D.N.Y. Sept. 25, 2023) (quoting *Cerrone*, 246 F.3d at 202–03).  In other words, an officer is entitled to qualified immunity if "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Grytsyk v. Morales*, No. 19-CV-3470, 2023 WL 6122693, at *4 (S.D.N.Y. Sept. 19, 2023) (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)); *see also Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (same).

The court assesses each Defendant's conduct in turn to determine if he is entitled to qualified immunity for their actions.

### i.  Condlin

Plaintiff's allegations can be construed to claim that Condlin conducted a pat-down of Plaintiff, searched the entirety of Plaintiff's vehicle, including its trunk and a backpack found in the trunk, and then arrested Plaintiff.  (*See* Compl. At 4–5.)

With regard to Condlin's pat-down search of Plaintiff, the Court determines that, at this stage, it cannot conclude that Condlin had arguable probable cause to affect this kind of search. The Complaint states that Condlin told Plaintiff that he smelled an odor of burned marijuana

---

[2]  This standard for qualified immunity applies to claims for unlawful search and seizure, false arrest, and malicious prosecution, as the existence of probable cause is a complete defense to each of these claims.  *See Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012) ("The existence of probable cause will defeat a claim of . . . unreasonable search and seizure."); *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) ("Probable cause is an absolute defense to a false arrest claim." (alteration adopted) (internal quotation marks and citation omitted)); *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) ("[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York.")

emanating from inside Plaintiff's vehicle, which Plaintiff denied.  (*Id.* at 4.)  Further, when

Condlin directly asked Plaintiff whether he was smoking marijuana, Plaintiff stated, "You are

looking right at me.  Do I appear to be under the influence of anything other than natural air?  I

absolutely have not been smoking anything at all."  (*Id.*)  Following this exchange, Condlin

asked Plaintiff to exit his car, and Plaintiff was subjected to a pat-down search of his person, and

then a more intrusive search of his pockets.  (*Id.*)  Based on this record, Condlin conducted a

search of Plaintiff's person based only on the smell of burned marijuana.  However, courts in the

Circuit have held that the smell of marijuana coming from a car, alone, does not justify the

search of a plaintiff's body.  *Smith v. Village Of Brockport*, No. 19-CV-6404, 2022 WL 597465,

at *16 (W.D.N.Y. Feb. 28, 2022) ("Here, . . . the odor of marijuana emanating from the [car] . . .

did not justify the search of [p]laintiff's body."); *United States v. Brock*, No. 13-CR-6025, 2016

WL 3743242, at *2 (W.D.N.Y. July 13, 2016) ("[T]he Court does not believe that the

generalized odor of marijuana, without more, gave the police the right to search the person of the

defendant, who was the driver of the car, or the two passengers.").  Accordingly, the Court will

not dismiss Plaintiff's Fourth Amendment claim with regard to the search of his person.

Concerning Condlin's search of Plaintiff's entire vehicle and the backpack found in the

trunk of the car, the Court also finds that it cannot decide, at the Motion to Dismiss stage, that

Condlin had arguable probable cause to conduct this search.  Plaintiff alleges that following

Condlin's search of Plaintiff's person, Condlin discovered that Plaintiff was in possession of

$5,100 but did not find any contraband or evidence of any crime from this search.  (Compl. At

4.)  After the money was recovered, Condlin ordered Plaintiff to his patrol vehicle and locked

Plaintiff in the back seat.  (*Id.*)  Condlin went back to Plaintiff's vehicle and conducted a search

of the inside of Plaintiff's car.  (*Id.* at 5.)  During the course of the search, Condlin opened the

15

trunk and recovered a locked medium-sized backpack.  (*Id.*)  After recovering a set of keys

within the car, Condlin opened the backpack.  (*Id.* at 5A.)

Courts in the Second Circuit have held that "under the automobile exception, based on a

generalized smell of marijuana, police officers may search the defendant's vehicle and any

containers where marijuana may be discovered."  *United States v. Daniels*, No. 21-CR-81, 2021

WL 4690837, at *9 (E.D.N.Y. Oct. 7, 2021); *see also United States v. Spain*, No. 18-CR-569,

2019 WL 948814, at *3 (S.D.N.Y. Feb. 13, 2019) (noting that there would be probable cause to

search vehicle and contents in the vehicle under the automobile exception if officers, in fact,

detected the smell of marijuana emanating from a car); *United States v. Whitlock*, No. 20-CR-17,

2021 WL 1439846, at *7 (D. Vt. Apr. 16, 2021) ("The smell of marijuana established probable

cause for federal law enforcement's search of the [Nissan] Sentra under the automobile

exception."); *United States v. Mack*, No. 17-CR-6159, 2018 WL 8898465, at *7 (W.D.N.Y. Nov.

29, 2018) ("[T]he smell of marijuana gave the officers probable cause to search any area of the

Sedona where marijuana could be found."), *report and recommendation adopted*, 2019 WL

2590741 (W.D.N.Y. June 25, 2019).

However, following the passage of New York Penal Law Section 222.05, effective

March 31, 2021, the law provides that:

> [N]o finding or determination of reasonable cause to believe a crime has been
> committed shall be based solely on evidence of the following facts and
> circumstances, either individually or in combination with each other:
>
> (a) the odor of cannabis;
>
> (b) the odor of burnt cannabis;
>
> (c) the possession of or the suspicion of possession of cannabis or
> concentrated cannabis in the amounts authorized in this article;

(d) the possession of multiple containers of cannabis without evidence of concentrated cannabis in the amounts authorized in this article;

(e) the presence of cash or currency in proximity to cannabis or concentrated cannabis; or

(f) the planting, cultivating, harvesting, drying, processing or possessing cultivated cannabis in accordance with section 222.15 of this article.

N.Y. Penal Law § 222.05(3).  Section 222.05 goes on to say that "[p]aragraph (b) of subdivision three of this section," the odor of burnt cannabis, "shall not apply when a law enforcement officer is investigating whether a person is operating a motor vehicle . . . while impaired by drugs . . . .  During such investigations, the odor of burnt cannabis shall not provide probable cause to search any area of a vehicle that is not readily accessible to the driver and reasonably likely to contain evidence relevant to the driver's condition."  *Id.* § 222.05(4).[3]

Based on Section 222.05(3), Condlin did not have arguable probable cause to search Plaintiff's vehicle solely on the basis of smelling marijuana and recovering $5,100 on Plaintiff's person.  Moreover, although it is not entirely clear if Condlin searched the vehicle to investigate whether Plaintiff was "operating a motor vehicle . . . while impaired by drugs," *see id.* § 222.05(4), such an exception still would not validate Condlin's search.  Condlin searched the entirety of Plaintiff's vehicle and a backpack found within, (*see* Compl at 4–5A), which goes far beyond "area[s] of [the] vehicle that" are "readily accessible to the driver and reasonably likely to contain evidence relevant to the driver's condition," N.Y. Penal Law § 222.05(4).  Accordingly, the Court concludes that, based on Plaintiff's allegations, Condlin did not have arguable probable cause to conduct this search, and therefore, Plaintiff's Fourth Amendment

---

[3] The statute is applicable to Plaintiff's case, as the incident between Plaintiff and Condlin occurred on April 19, 2021, (*see* Compl. at 4), and the statute became effective as of March 31, 2021, *see* N.Y. Penal Law § 222.05.

claim with regard to the search of the entirety of his vehicle and backpack survives Defendants'
Motion to Dismiss.

    As to Plaintiff's arrest, the Court determines that Condlin had arguable probable cause.
As an initial matter, it is worth noting that even though the Court finds that Condlin did not have
arguable probable cause to conduct the search of Plaintiff's person, vehicle, or backpack, such a
fact does not mean that Plaintiff's later arrest based on items recovered in these previous
searches was also necessarily conducted without arguable probable cause, since the "fruit of the
poisonous tree" doctrine does not apply in Section 1983 cases. *See DiMascio v. City of Albany*,
205 F.3d 1322 (2d Cir. 2000) ("[A]ppellant's theory that the officers lacked probable cause to
arrest him is founded on the 'fruit of the poisonous tree' doctrine, or, as applied to this case, the
notion that the officers necessarily lacked probable cause to arrest him for unlawful possession of
the knives and gun because they lacked probable cause to make the stop that led them to discover
this evidence.  We have held, however, that the fruit of the poisonous tree doctrine is
'inapplicable to civil [Section] 1983 actions.'" (quoting *Townes v. City of New York*, 176 F.3d
138, 145, 149 (2d Cir.), *cert. denied*, 120 S. Ct. 398 (1999)).

    Here, the Complaint asserts that following Condlin's search of Plaintiff's backpack,
Condlin discovered, by Plaintiff's estimation, "four and one-half pounds of high-grade
marijuana" and several large, black, opaque plastic bags containing ninety-five cartons of
cigarettes.  (Compl. at 5A.)  Section 222.25 of New York Penal Law provides, "[a] person is
guilty of unlawful possession of cannabis when he or she knowingly and unlawfully possesses
cannabis and such cannabis weighs more than three ounces or concentrated cannabis and such
concentrated cannabis weighs more than twenty-four grams."  N.Y. Penal Law § 222.25.  As
such, because the Complaint alleges that Plaintiff was in possession of far more than three

ounces of marijuana, Condlin had arguable probable cause to arrest Plaintiff, and therefore, Condlin is entitled to qualified immunity. *See e.g.*, *Jimenez v. City of New York*, No. 21-CV-6133, 2024 WL 198319, at *6 (E.D.N.Y. Jan. 18, 2024) ("Because arguable probable cause existed, qualified immunity shields [the officers] from liability for false arrest." (internal quotation marks and citation omitted)). Accordingly, the Court will dismiss Plaintiff's Fourth Amendment claim with regard to his arrest.

## ii. Schmoke

Finally, with respect to Schmoke's conduct, the Court finds that Schmoke acted with arguable probable cause when he served as an affiant for Plaintiff's criminal complaint, even though he allegedly did not have direct personal knowledge of the events that occurred between Condlin and Plaintiff. (*See* Compl. At 5A–5B.)

"[O]nce probable cause to arrest has been established, claims of malicious prosecution survive only if, between the arrest and the initiation of the prosecution, the groundless nature of the charges is made apparent by the discovery of some intervening fact." *Giles v. City of Mt. Vernon*, No. 20-CV-5119, 2024 WL 126883, at *7 (S.D.N.Y. Jan. 11, 2024) (quoting *Smith v. Tobon*, 529 F. App'x 36, 38 (2d Cir. 2013) (summary order) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996), *as amended* (May 21, 1996))); *see also Walston v. City of New yor'*, 289 F. Supp. 3d 398, 407 (E.D.N.Y. 2018), *aff'd*, 754 F. App'x 65 (2d Cir. 2019) (same).

Moreover, "[u]nder the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation." *United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001). In other words, this

19

doctrine "allows the knowledge of one law enforcement officer to be imputed to another for the purposes of probable cause." *Williams v. City of New York*, No. 20-CV-5995, 2023 WL 8603028, at *3 (S.D.N.Y. Dec. 12, 2023) (citing *Colon*, 250 F.3d at 134–135); *see also Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("Police officers, when making a probable cause determination, are entitled . . . to rely on the allegations of fellow police officers.").

Here, having already decided that Condlin had arguable probable cause to arrest Plaintiff for violating New York Penal Law Section 222.25, and because Plaintiff does not plead any allegations to demonstrate that between his arrest and the initiation of the prosecution, "the groundless nature of [his] charges [was] made apparent by the discovery of some intervening fact," *Giles*, 2024 WL 126883, at *7, the Court concludes that there was arguable probable cause, such as to defeat his malicious prosecution claim.  Additionally, the fact that Schmoke did not have direct personal knowledge of the events that occurred between Condlin and Plaintiff, does not defeat a finding of arguable probable cause, as Schmoke was entitled to rely on information from his fellow police officers for purposes of probable cause.  *Williams*, 2023 WL 8603028, at *3; *see also Hanniford v. City of Poughkeepsie*, No. 21-CV-10359, 2024 WL 233412, at *4 (S.D.N.Y. Jan. 22, 2024) (holding that an officer was entitled to rely on another officer's statements to support finding of probable cause).

Accordingly, because the Court determines that Schmoke had arguable probable cause, by virtue of the collective knowledge doctrine, to swear on Plaintiff's criminal complaint, Schmoke is entitled to qualified immunity for Plaintiff's malicious prosecution claim.  Thus, the Court dismisses Plaintiff's malicious prosecution claim.

2.  New York State Cigarette Taxes

Plaintiff also seeks to have New York State cigarette taxes declared unconstitutional and requests injunctive relief from the enforcement of these taxes.  (*See* Compl. at 5.)  Defendants argue, inter alia, that Plaintiff does not have standing to assert declaratory and injunctive relief.  (*See* Defs.' Mem. at 5.)  The Court agrees.

Article III of the Constitution restricts the federal judicial power to the resolution of "Cases" and "Controversies."  U.S. Const. art. III, § 2.  Under Article III, "a case or controversy can exist only if a plaintiff has standing to sue."  *United States v. Texas*, 599 U.S. 670, 675 (2023); *accord TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  To satisfy that bedrock requirement, a plaintiff must show "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likelihood' that the injury 'will be redressed by a favorable decision.'"  *Vitagliano v. County of Westchester*, 71 F.4th 130, 136 (2d Cir. 2023) (per curiam) (quoting *Picard v. Magliano*, 42 F.4th 89, 97 (2d Cir. 2022)).  An injury in fact, in turn, means "an invasion of a legally protected interest," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)), that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," *Lujan*, 504 U.S. at 560 (internal quotation marks omitted).  "Each element 'must be supported with the manner and degree of evidence required at the successive stages of the litigation.'"  *Doe No. 1 v. Putnam County*, 344 F. Supp. 3d 518, 528 (S.D.N.Y. 2018) (alteration adopted) (quoting *Lujan*, 504 U.S. at 561).  "At the pleading stage, a plaintiff need only 'clearly allege facts demonstrating' each element."  *Id.* (alteration adopted) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Additionally, "[t]o establish standing to obtain prospective relief," in this case, declaratory and injunctive relief, "a plaintiff must show a likelihood that he will be injured in the future," *Carver v. City of New York*, 621 F.3d 221, 228 (2d Cir. 2010) (internal quotation marks and citation omitted), "[t]hat is, a plaintiff must demonstrate a 'certainly impending' future injury," *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158, (1990)).  To do so, "a plaintiff cannot rely solely on past injuries; rather, the plaintiff must establish how he or she will be injured prospectively and that the injury would be prevented by the equitable relief sought."  *Id.*; *see also Johnson v. Padin*, No. 20-CV-637, 2020 WL 4818363, at *6 (D. Conn. Aug. 16, 2020) ("To obtain prospective injunctive relief, whether preliminary or permanent, a plaintiff 'cannot rely on past injury[,] but must show a likelihood that she will be injured in the future." (alterations adopted) (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)); *Kelly v. N.Y. State Civ. Serv. Comm'n*, No. 14-CV-716, 2015 WL 861744, at *4 n.4 (S.D.N.Y. Jan. 26, 2015) (same); *Krull v. Oey*, No. 19-CV-142, 2019 WL 1207963, at *10 (N.D.N.Y. Mar. 14, 2019) (same).  Thus, a plaintiff may allege a "future injury" if he shows that "the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)).

Here, Plaintiff seeks to have New York State cigarette taxes declared unconstitutional and requests injunctive relief from the enforcement of these taxes, (*see* Compl. at 5), but he fails to allege in his Complaint "a likelihood of either future harm or continuing harm," *Krull*, 2019 WL 1207963, at *10.  All of Plaintiff's allegations relate to his criminal charges that were dismissed in April 2022, including those relating to the possession of untaxed cigarettes.  (*See* Compl. at 5A.)  He does not allege any other incidents where he was subject to New York State

cigarette taxes, nor does he allege that he expects to be subject to these taxes in the future. (*See generally id.*)  Because Plaintiff has solely "rel[ied] on past injury," without "show[ing] a likelihood that he . . . will be injured in the future," the Court may not grant his claim for prospective declaratory or injunctive relief.  *DeShawn*, 156 F.3d at 344 ("A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement."); *see also Tobin v. Touchette*, No. 19-CV-213, 2020 WL 6828013, at *4 (D. Vt. July 15, 2020) (finding prisoner lacked standing to seek injunctive relief because he had failed to allege that medication shortages had or would recur), *report and recommendation adopted sub nom. Tobin v. Baker*, No. 19-CV-213, 2020 WL 4932279 (D. Vt. Aug. 21, 2020); *Patterson v. Patterson*, No. 16-CV-844, 2019 WL 1284346, at *6 (W.D.N.Y. Mar. 20, 2019) ("Plaintiff fails to allege an ongoing violation or threat of future enforcement of federal law that would entitle him to injunctive relief."); *Caruso v. Zugibe*, No. 14-CV-9185, 2015 WL 5459862, at *6 (S.D.N.Y. June 22, 2015) (denying claim for prospective injunctive relief because, "even if [the] defendants [had] violated [the] plaintiff's rights in the past as she allege[d]," the plaintiff "ha[d] not plausibly alleged a sufficient likelihood that she [would] again be wronged in a similar way" (alteration adopted) (internal quotation marks and citation omitted)).

### III.  Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is granted in part and denied in part.  Specifically, the Court dismisses each of Plaintiff's claims against the Defendants in their official capacities.  In addition, the Court dismisses all of Plaintiff's claims against Defendants in their individual capacities, except for Plaintiff's Fourth Amendment claim against Condlin regarding the search of Plaintiff's person, vehicle, and backpack.  The latter survives

Defendants' Motion to Dismiss.  Finally, the Court denies Plaintiff's request for declaratory and injunction relief as to New York State cigarette taxes.

The dismissal is without prejudice because this is the first adjudication on the merits of Plaintiff's claims.  *See Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (explaining that "district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings" unless "amendment would be futile").

Should Plaintiff choose to file an amended complaint, he must do so within thirty days of this Opinion, addressing the deficiencies identified herein.  The amended complaint will replace, not supplement, the complaint currently before the Court.  It therefore must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider, including the identification of individuals and the nature of their involvement.  If Plaintiff fails to abide by the 30-day deadline, the claims that are dismissed could be dismissed with prejudice.  In addition, to the extent that Plaintiff amends the complaint to include defendants who have been dismissed from this Action through this Opinion, and who previously have not been served, Plaintiff must make a separate application to the Court after filing the amended complaint to request an Order of Service for those defendants.

The Clerk of Court is respectfully requested to terminate the pending Motion, (Dkt. No. 13), mail a copy of this Opinion & Order to Plaintiff's address listed on the docket, and also email him a copy to the email address provided in his January 23, 2023 letter, (Dkt. No. 8). SO ORDERED.

Dated:   February 26, 2024
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge