UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EARL HAYES,

                      Plaintiff,

        v.

BRADY CONDLIN, *et al.*,

                      Defendants.

No. 22-CV-7295 (KMK)

OPINION & ORDER

Appearances:

Earl Hayes
Teaneck, NJ
*Pro se Plaintiff*

Jennifer L. Goltche, Esq.
John E. Jerman, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

      Plaintiff Earl Hayes ("Plaintiff") brings this Action against Defendants Brady Condlin

("Condlin"), Steven Schmoke ("Schmoke"),[1] the Dutchess County District Attorney's Office,

and the state of New York (collectively, "Defendants"), alleging he was unlawfully stopped and

searched and that his property was unlawfully seized during a traffic stop in 2021 and during his

---

[1] Plaintiff sues Schmoke and Condlin under 42 U.S.C. § 1983 "in their official and individual capacities." (Am. Compl. ("AC") 1 ¶ 11 (Dkt. No. 24).) For the same reasons the Court stated in its Order denying in part the previous Motion to Dismiss, Plaintiff can only maintain § 1983 claims against them for damages in their individual capacities. (Order 10 (Dkt. No. 18) ("Accordingly, any damages claim against Defendants in their official capacities is considered a damages claim against New York State itself, and therefore, must be dismissed." (citing *Kentucky v. Graham*, 473 U.S. 159, 169–70 (1985)).)

prosecution the following year, which was later dismissed. (*See* Am. Compl. ("AC") (Dkt. No. 24).) After the Court granted in part and denied in part Defendants' first Motion to Dismiss, (*see* Order ("MTD Order") (Dkt. No. 18)), Plaintiff amended his Complaint, adding New York and the Dutchess County District Attorney's Office as defendants, alleging additional facts relating to his stop, and adding new claims. (*See* AC.) Before the Court is Defendants' Motion to Dismiss the Amended Complaint. (*See* Mot. to Dismiss Am. Compl. (Dkt. No. 42).) For the following reasons, the Court again denies Defendants' Motion as to Plaintiff's claim that Condlin unlawfully searched his person, vehicle, and backpack, and grants it as to the remaining claims.

## I.  Background

### A.  Factual Background

The following facts are drawn from the Amended Complaint and assumed true for the purposes of the Motion to Dismiss. On April 19, 2021, at about 4:45 PM, Plaintiff was driving north on the Taconic State Parkway in East Fishkill. (AC ¶ 15.) Condlin, "a member of the New York State Police Department," pulled Plaintiff over. (*Id.* ¶ 17.) Plaintiff alleges that at the time he was stopped, he had not "violated any provision of the Vehicle and Traffic Law." (*Id.* ¶ 28.) Condlin asked for Plaintiff's license, registration, and insurance. (*Id.* ¶ 18.) He then "ordered Plaintiff to exit the vehicle," frisked him, and found "approximately $5,100.00" in Plaintiff's pockets. (*Id.* ¶ 19.) Condlin "seized" "Plaintiff's money," then "locked [Plaintiff] in the backseat of [Condlin's] patrol vehicle." (*Id.*) Schmoke, another officer, then "arrived on the scene, presumably to assist" Condlin. (*Id.* ¶ 20.)

Condlin then searched the "interior passenger area" and trunk of Plaintiff's vehicle. (*Id.* ¶ 21.) In the trunk, Condlin found "a medium-sized locked backpack," and returned to the patrol car to ask Plaintiff what it contained. (*Id.* ¶ 22.) Plaintiff declined to tell him. (*Id.*) Condlin

again searched the car, retrieving keys to the backpack, opening it, and finding "approximately four and one-half pounds of high-grade marijuana" inside. (*Id.*) The trunk also contained "large, black, heavy-duty plastic bags" that "were tied shut." (*Id.* ¶ 23.) Condlin untied them, finding "and seiz[ing] approximately eighty-five cartons of cigarettes." (*Id.*) "At no time while all of this took place did Defendant Schmoke intervene and stop or otherwise prevent Defendant Condlin" from effectuating the stop and search Plaintiff describes. (*Id.* ¶ 24.)

Condlin "then removed Plaintiff from the patrol car and formally arrested and handcuffed Plaintiff," after which Plaintiff was taken to a state police facility for booking and processing. (*Id.* ¶¶ 25–26.) Plaintiff was then charged in East Fishkill "with a felony tax charge related to the cigarette seizure, and a misdemeanor charge related to the marijuana seizure." (*Id.* ¶ 27.) Those charges were later dismissed with prejudice. (*Id.*)

### B. Procedural History

Plaintiff filed his first Complaint on August 25, 2022, only against Condlin and Schmoke, asserting what the Court construed as claims under 42 U.S.C. § 1983 for an unlawful search and seizure, false arrest, and malicious prosecution. (Compl. (Dkt. No. 1).) Plaintiff also sought declaratory and injunctive relief holding New York State's cigarette taxes unconstitutional. (*Id.*) After granting extensions of time for service and answer, Defendants moved to dismiss on May 9, 2023. (Mot. to Dismiss (Dkt. No. 13).) The Court granted the Motion in part and denied it in part on February 26, 2024, finding Plaintiff had only stated a claim against Condlin in his individual capacity "regarding the search of Plaintiff's person, vehicle, and backpack." (MTD Order 23.) The Court gave Plaintiff 30 days to amend. (*Id.* at 24.) As Plaintiff had not amended within that deadline, and had not responded to the Court's May 12, 2024 Order to Show Cause why his claims should not be dismissed for failure to prosecute, (*see* Order 2 (Dkt. No. 22)), the

Court dismissed this case without prejudice for failure to prosecute on June 17, 2024, (*see* Order 3 (Dkt. No. 23)).  Plaintiff filed an Amended Complaint on July 8, 2024, (*see* AC), and the Court reopened the case on October 28, 2024, finding that while Plaintiff "repeated[ly] fail[ed] to meet deadlines set by the Court, given the solicitude typically afforded to pro se litigants," reopening the case was appropriate, (*see* Order 2 (Dkt. No. 25)).  Defendants moved to dismiss on July 18, 2025.  (*See* Mot. to Dismiss (Dkt. No. 42); Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 43).)  Plaintiff responded on September 17, 2025.  (*See* Resp. in Opp'n to Mot. ("Pl.'s Opp.") (Dkt. No. 47.)  Defendants replied on September 25, 2025.  (*See* Reply Mem. of L. in Supp. re: Mot. to Dismiss ("Reply") (Dkt. No. 48).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and internal quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (noting that a district court should only consider the complaint,

documents appended to the complaint or incorporated by reference, and matters judicial notice can be taken of in ascertaining facts for a motion to dismiss).

Moreover, where, as here, a plaintiff proceeds pro se, the Court must construe his submission "liberally and interpret it to raise the strongest arguments that it suggests." *Ashmeade v. Amazon.com*, No. 23-CV-4331, 2024 WL 4266391, at *7 (S.D.N.Y. Sept. 23, 2024) (alterations adopted) (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (same).  Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics omitted) (internal quotation marks and citation omitted)).

B.  Analysis

1.  Unlawful Search and Seizure Against Condlin

Plaintiff's first claim is against Condlin for "conduct[ing] an unlawful search . . . of Plaintiff's person, then of Plaintiff's automobile" and for "conduct[ing] an unlawful seizure of Plaintiff's person and automobile" while effecting that search.  (AC ¶¶ 36, 37.)  The Court denied Defendant's Motion to Dismiss as to this claim in the original Complaint, and it is pled here with substantially the same facts.  (*See* MTD Order 15 ("Accordingly, the Court will not dismiss Plaintiff's Fourth Amendment claim with regard to the search of his person.").)

Defendants only move to dismiss on the grounds that Condlin is entitled to qualified immunity for the search.  (Defs.' Mem. 12.)  A police officer will be protected from liability for

6

his discretionary actions by the doctrine of qualified immunity "where '(1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act.'" *Delgado v. City of New York*, No. 19-CV-6320, 2023 WL 6390134, at *7 (S.D.N.Y. Oct. 2, 2023) (quoting *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007)); *see also Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001) (same). "In the case of allegations to which probable cause is a complete defense, such as false arrest or imprisonment, the Second Circuit has defined the standard of qualified immunity as one of 'arguable probable cause.'" *Betts v. Shearman*, No. 12-CV-3195, 2013 WL 311124, at *4 (S.D.N.Y. Jan. 24, 2013) (quoting *Cerrone*, 246 F.3d at 202), *aff'd*, 751 F.3d 78 (2d Cir. 2014).[2] "Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed." *Aurecchione v. Falco*, No. 22-CV-4538, 2023 WL 6255529, at *10 (S.D.N.Y. Sept. 25, 2023) (quoting *Cerrone*, 246 F.3d at 202–03). In other words, an officer is entitled to qualified immunity if "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Grytsyk v. Morales*, No. 19-CV-3470, 2023 WL 6122693, at *4 (S.D.N.Y. Sept. 19, 2023) (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)); *see also Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (same).

---

[2] This standard for qualified immunity applies to claims for unlawful search and seizure, as the existence of probable cause is a complete defense to each of these claims. *See Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012) ("The existence of probable cause will defeat a claim of . . . unreasonable search and seizure.").

Here, Defendants argue "it was objectively reasonable" for Condlin "to believe that he was permitted to search Plaintiff's vehicle, as it was likely that an odor of marijuana emanated from the four and a half pounds in his possession." (Defs.' Mem. 12.)  The Court, however, previously addressed this argument, finding that based on a New York law passed shortly before the encounter, "Condlin did not have arguable probable cause to search Plaintiff's vehicle solely on the basis of smelling marijuana and recovering $5,100 on Plaintiff's person," and "[t]he statute is applicable to Plaintiff's case."  (MTD Order 17, 17 n.3 (citing N.Y. Penal Law § 222.05(3).)  *See Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584, 608 (S.D.N.Y. 2013) ("When a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." (alteration adopted and citation omitted)).  Defendants argue for the first time in briefing this Motion that "it would have been objectively reasonable for Defendant Condlin not to have been aware of the recent change in law." (Defs.' Mem. 12.)  Even if the Court agreed, whether Condlin in fact searched Plaintiff because of the odor of marijuana, or if there even was such an odor and whether he perceived it, is a fact issue the Court cannot resolve at this stage.[3]  Construing Plaintiff's pleadings liberally—as the Court must, see *Sykes*, 723 F.3d at 403— Plaintiff seems to allege Condlin did not perceive that odor.  (*See* AC ¶¶ 29–30 ("At no time prior to the stop did there exist probable . . . cause to stop and/or seize Plaintiff . . . [A]t no time prior to the search of the trunk of Plaintiff's vehicle did there exist . . . sufficient cause to access

---

[3] Defendants contend that "Plaintiff intentionally omitted the fact that Defendant Condlin indicated he noticed an odor of marijuana prior to asking him to exit his vehicle in the Amended Complaint." (Defs.' Mem. 12 n.3.)  Regardless of Plaintiff's motivations, that allegation is not in his Amended Complaint, which replaces his initial Complaint, so the Court may not consider it. (*See generally* AC.)  *See Reyes v. Fairfield Properties*, 661 F. Supp. 2d 249, 269 (E.D.N.Y. 2009) ("[T]he original complaint has been superseded by the amended complaint, and those factual allegations cannot be considered by the Court on this motion.").

the trunk and/or search it.").)  So while "it is appropriate to decide the issue of qualified

immunity, when raised, at an early stage of the litigation, such as when deciding a pre-answer

motion to dismiss,'" *Drayton v. Young*, No. 17-CV-5440, 2018 WL 5831324, at *5 (S.D.N.Y.

Nov. 7, 2018) (alterations adopted and citations omitted), here, "adjudication as to . . . qualified

immunity . . . would be premature since 'resolution of qualified immunity depends on the

determination of certain factual questions that cannot be answered at this stage of the litigation,'"

*Vail v. Smith*, No. 12-CV-234, 2013 WL 938025, at *5 (N.D.N.Y. Jan. 18, 2013) (quoting

*Denton v. McKee*, 332 F. Supp. 2d 659, 666 (S.D.N.Y. 2004)); *see also Washington v. Dewey*,

433 F. Supp. 3d 334, 351 (D. Conn. 2020) ("Since there are questions of fact as to arguable

probable cause, the Court does not grant summary judgment on the basis of qualified

immunity.")

Accordingly, the Court need not decide now whether "it would have been objectively

reasonable" for Condlin "not to have been aware of" N.Y. Penal Law § 222.05(3), since whether

Condlin perceived the odor of marijuana at all requires the resolution of factual disputes the

Court cannot resolve on a motion to dismiss.  (Defs.' Mem. 12.)  Defendants' Motion to Dismiss

is accordingly denied as to this claim.

### 2.  Deprivation of Property Without Due Process—Condlin

Plaintiff's second, third, and fourth causes of action are for deprivation of property.  He

contends, respectively, that "Condlin conducted a seizure of United States currency that was

found during his search of Plaintiff's person," resulting in the "deprivation of his property for

approximately one year," and "caus[ing] a significant financial hardship for Plaintiff," (AC ¶

39); Condlin "seiz[ed] [the] cigarettes that were found after [his] search of the trunk," (*id.* 41);

and Condlin seized the four and a half pounds of marijuana, (*id.* 43).

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV § 1. "In adjudicating due process claims, '[courts] consider two distinct issues: 1) whether plaintiffs possess a liberty or property interest protected by the Due Process Clause; and, if so, 2) whether existing state procedures are constitutionally adequate.'" *Ford Motor Credit Co. v. N.Y.C. Police Dep't*, 503 F.3d 186, 190 (2d Cir. 2007) (quoting *Kapps v. Wing*, 404 F.3d 105, 112 (2d Cir. 2005)).

Plaintiff did not have a protected property interest in the marijuana. The marijuana he claims to have had in the amount that he had it in is contraband, *i.e.*, "illegal or prohibited traffic or goods or merchandise," *United States v. Pierce*, 224 F.3d 158, 166–67 (2d Cir. 2000), no matter his argument that it would have been legal for him to keep that amount in his home*, see* N.Y. Penal L. § 222.25; *id.* § 222.30. Plaintiff accordingly cannot state a § 1983 claim for its confiscation. *See Sash v. United States*, No. 09-CV-450, 2009 WL 3007379, at *5 (S.D.N.Y. Sept. 22, 2009) ("Because he does not have a protected interest in the contraband, defendants' allegedly unlawful possession of the property cannot give rise to a 1983 claim.").

Plaintiff did, however, have a protected property interest in the money and the collection of cigarettes, neither of which Defendants argue is contraband.[4] But Plaintiff has not alleged that

---

[4] Federal law defines as "contraband cigarettes," "a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes, and which are in the possession of any person other than" categories into which Plaintiff has not contended he falls. 18 U.S.C. § 2341(2). While it is highly plausible Plaintiff had well over 10,000 cigarettes (he alleges he had 85 cartons, (AC ¶ 23), and a standard carton contains 200 cigarettes, *see Freedom Holdings, Inc. v. Spitzer*, 447 F. Supp. 2d 230, 237 n.7 (S.D.N.Y. 2004)), the Amended Complaint includes no facts from which the Court could infer the cartons did or did not have some "indication . . . to evidence payment of cigarette taxes" in their state of purchase, 18 U.S.C. § 2341(2). In any event, the Court need not

10

New York's existing state procedures for litigating those interests are constitutionally inadequate, which is required to allege he was deprived of that property interest *without due process* under federal law. "[D]eprivation of property by a state actor, whether intentional or negligent, does not give rise to a [due process] claim under § 1983 so long as the law of that state provides for an adequate post-deprivation remedy and the deprivation was the result of a 'random and unauthorized' act." *David v. N.Y.P.D. 42nd Precinct Warrant Squad*, No. 02-CV-2581, 2004 WL 1878777, at *5 (S.D.N.Y. Aug. 23, 2004) (quoting *Butler v. Castro*, 896 F.2d 698, 700 (2d Cir. 1990)). "Here, Plaintiff does not allege that h[is] alleged deprivation was due to an established state procedure . . . [and] there existed adequate state post-deprivation remedies that Plaintiff could have used to retrieve [his property that was held during his prosecution]—or to receive monetary compensation in the event they were lost—such as, bringing a state law claim in the Court of Claims." *Harris v. City of New York*, No. 16-CV-1214, 2018 WL 4471631, at *10 (E.D.N.Y. Sept. 18, 2018) (holding adequate state remedies existed for police vouchering plaintiff's phone and other property after her arrest, and failing to return it after her prosecution concluded); *see infra* Part II(B)(4).[5]

---

reach this issue at this stage because it finds Plaintiff has not adequately alleged a deprivation of property without due process.

[5] Even if the seizure were not "random and unauthorized," here, "the question of how to classify [Defendants'] action is immaterial, and so [this Court] need not decide it" because if the seizure were "random and unauthorized . . . the existence of a meaningful post-deprivation remedy[,] which New York has provided in this case . . . would automatically satisfy due process," and if the seizure were "part of an established state procedure, such that the availability of a post-deprivation remedy would not automatically satisfy due process, [the Court] would merely go on to determine what process was due." *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 466 (2d Cir. 2006) (citation omitted); *id.* (going on to conclude "the process provided to [plaintiff to redress the deprivation] was adequate"). And the processes that New York provides for redressing deprivations of property by the state satisfy constitutional due process minima. *See Forman v. Coughlin*, No. 93-CV-8412, 1994 WL 708150, at *1 (S.D.N.Y. Dec. 20, 1994) ("The property deprivation claim . . . is without merit irrespective of the alleged

11

Without an allegation that the New York state process available to Plaintiff to litigate his property claims was anything less than what was due to him, the Court cannot find Plaintiff was deprived of property without due process of law under *federal* law.  Accordingly, Defendants' Motion is granted as to Plaintiff's deprivation of property claims against Condlin.

### 3.  Failure to Intervene—Schmoke

The Amended Complaint can be construed as bringing a failure to intervene claim against Schmoke.  While there is not an enumerated cause of action in the Amended Complaint against Schmoke for failure to intervene or any other claim, Schmoke is still named as a defendant, and Plaintiff seems to have intended to bring a failure to intervene claim against him.  (*See* AC ¶ 24 ("At no time while all of this took place did Defendant Schmoke intervene and stop . . . Defendant Condlin . . ."); Defs.' Mem. 7 (construing Plaintiff as claiming "failure to intervene" and contesting the claim); Pl.'s Opp. 4 ("Plaintiff reiterates that Defendant Schmoke arrived on the scene in time to stop Defendant Condlin from engaging in the conduct that violated Plaintiff's rights.").)  The Court must construe pro se filings to raise the strongest arguments the facts alleged suggest.  *See Goonewardena v. Spinelli*, No. 15-CV-5239, 2017 WL 4280549, at *3 n.2 (E.D.N.Y. Sept. 26, 2017) ("While Plaintiff did not specifically allege each of the claims specified above, because Plaintiff is proceeding pro se, in accordance with Second Circuit precedent, [the Court] liberally construe[s] the [complaint] to allege any claims supported by the

---

level of culpability because no constitutional injury is alleged.  New York has adequate remedies via recourse to the New York Court of Claims.  The Constitution requires nothing more."); *Pittman v. Billings*, No. 20-CV-422, 2020 WL 2079440, at *3 (N.D.N.Y. Apr. 30, 2020) ("New York State provides an adequate post-deprivation remedy against the County for loss of personal property in the form of actions for negligence, replevin, and conversion, governed procedurally by New York's General Municipal Law, Ch. 24, Art. 4. . . . [A] proceeding under Article 78 also constitutes an adequate post-deprivation procedure[.]" (citations omitted)), *report and recommendation adopted*, 2020 WL 2574631 (N.D.N.Y. May 21, 2020).

factual allegations in the TAC." (citing *Wiley v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015)); *see also Driessen v. Natwest Bank PLC*, 580 F. App'x 32, 32 (2d Cir. 2014) (summary order) ("Courts should read pro se complaints with 'special solicitude' and interpret them 'to raise the strongest claims that they suggest.'" (alterations adopted) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011))). Accordingly, the Court construes the Complaint as bringing a claim for failure by Schmoke to intervene in Condlin's search.

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). "Liability may attach only when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988)); *see also Valverde v. Folks*, No. 19-CV-8080, 2020 WL 5849515, at *7 (S.D.N.Y. Sept. 30, 2020) (same); *Bouche v. City of Mount Vernon*, No. 11-CV-5246, 2012 WL 987592, at *5 (S.D.N.Y. Mar. 23, 2012) (same). "The essential inquiry is whether, under the circumstances actually presented, an officer's failure to intervene permits a reasonable conclusion that he became a 'tacit collaborator' in the unlawful conduct of another." *Figueroa v. Mazza*, 825 F.3d 89, 107–108 (2d Cir. 2016). Because "[w]hether an officer was capable of preventing the harm and had sufficient time to intercede" is highly circumstance- and fact-driven, courts generally treat it as "an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Gardner v. City of New*

13

*York*, No. 16-CV-6476, 2021 WL 3848112, at *7 (E.D.N.Y. Aug. 27, 2021) (quoting *Branen*, 17 F.3d at 557).

As to the first element, Plaintiff alleges Schmoke "arrived on the scene" after Condlin patted down Plaintiff and seized the cash, and while Plaintiff was held in Condlin's vehicle pending the search of Plaintiff's own vehicle.  (AC ¶ 20.)  Throughout the subsequent search, Schmoke did not "intervene or stop" Condlin.  (*Id.* ¶ 24.)  Defendants argue that Schmoke cannot be liable for failure to intervene because "failing to intervene in a search or the recovery of property, without more, fails to state a claim alleging personal involvement," so "[w]ithout a single factual allegation indicating that Defendant Schmoke was personally involved in any constitutional violation, the claims against Defendant Schmoke must be dismissed." (Defs.' Mem. 8.)  But Defendants have this backwards—failing to intervene in an unconstitutional act *is* sufficient "personal involvement" to state a claim for failure to intervene in that act.  *See Marom v. Blanco*, No. 15-CV-2017, 2019 WL 3338141, at *6 (S.D.N.Y. July 25, 2019) ("A defendant is also considered 'personally involved' if he or she fails to intervene despite having a realistic opportunity to prevent the constitutional violation from occurring." (first citing *Harris v. City of New York*, No. 15-CV-8456, 2017 WL 6501912, at *3 (S.D.N.Y. Dec. 15, 2017), then citing *Branen*, 17 F.3d at 557).  The requisite "personal involvement" here is Plaintiff's allegation that Schmoke was present for what Plaintiff claims was an unconstitutional search and seizure and the reasonable inference that Schmoke could have intervened at any point during it.  (*See* AC ¶¶ 20–24.)  That is enough to allege, at this stage, that Schmoke "had a realistic opportunity to intervene." *Jean-Laurent*, 540 F. Supp. 2d at 512.  *See Martinez v. Belcourt*, No. 20-CV-286, 2020 WL 5118016, at *7 (D. Conn. Aug. 31, 2020) (finding a plausible failure to intervene claim where plaintiff "allege[d] that Trooper Ewing and Officer Belcourt were present during the

14

fourth search conducted by Trooper Weber but did not attempt to intervene"); *see also Terebesi*, 764 F.3d at 244 ("Whether the officer had a realistic opportunity to intervene is normally a question for the jury, unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." (quotation marks and citation omitted)).

Where this claim falters is the second element: whether a reasonable person in Schmoke's position would have known Plaintiff's rights were being violated. The Amended Complaint offers no facts from which the Court could conclude Schmoke, who arrived *after* Condlin had already stopped Plaintiff and begun searching him, should have or would have known Condlin did so without probable cause. *See Universal Calvary Church v. City of New York*, No. 96-CV-4606, 2000 WL 1538019, at *9 n.20 (S.D.N.Y. Oct. 17, 2000) ("Although a failure to intervene and protect claim does not require a showing of presence, it does require the officer to have observed or have reason to know of the alleged violation." (citing *Branen*, 17 F.3d at 557)). The Amended Complaint only alleges that Schmoke arrived and did nothing—it does not allege that he did know or should have known that the search was illegal. The Court cannot therefore infer that a reasonable officer in his position would have known to try to stop Condlin from continuing the search. *See Wierzbic v. Cnty. of Erie*, No. 13-CV-978S, 2018 WL 550521, at *8 (W.D.N.Y. Jan. 25, 2018) ("[I]t was reasonable for Officer Braeuner—who was the last law enforcement official to arrive and is not alleged to have any knowledge of what took place prior to his arrival—to believe that probable cause existed to arrest both Raymond and Bernice."); *Hickey v. City of New York*, No. 01-CV-6506, 2004 WL 2724079, at *17 (S.D.N.Y. Nov. 29, 2004) (granting summary judgment to defendant officers on failure to intervene claims for false arrest where "officers who encountered [plaintiff] later [following her arrest] cannot

have known" the arrest was unlawful).[6]  Accordingly, the Court grants Defendants' Motion as to

the failure to intervene claim against Schmoke.

> ### 4.  Deprivation of Property Without Due Process—Dutchess County District
> ### Attorney's Office

Plaintiff's fifth cause of action is against the Dutchess County District Attorney's Office

("DCDAO") for deprivation of property.  (AC ¶¶ 44–45.)  He alleges the DCDAO unlawfully

held three pieces of his property: the marijuana, the cash, and the cigarettes.  (*Id.* ¶ 45.)

Prosecutorial immunity would protect the Dutchess County District Attorney's Office for

holding Plaintiff's property for use in his criminal prosecution, at least until the end of that

prosecution.  Absolute immunity extends to "acts undertaken by a prosecutor in preparing for the

initiation of judicial proceedings or for trial, and which occur in the course of his role as an

advocate for the State, are entitled to the protections of absolute immunity."  *Buckley v.*

---

[6] Defendants' arguments that probable cause is imputed to Schmoke because Condlin had probable cause, under the "collective knowledge" doctrine, (Defs.' Mem. 7), are inapposite here because the Court denies Defendants' Motion as to the § 1983 claim based on Condlin's search without probable cause.

And the collective knowledge doctrine would not impute Condlin's *lack* of probable cause to Schmoke.  As the Second Circuit has articulated the doctrine, "an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation."  *See United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001).  The Second Circuit has not held that this doctrine works in the *inverse*.  *See Savino v. City of New York*, 331 F.3d 63, 74 (2d Cir. 2003) ("[T]he doctrine has traditionally been applied to *assist* officers in establishing probable cause—not to impute bad faith to one member of an enforcement team on the basis of another member's knowledge.").  If Schmoke had *participated* in the search and a § 1983 claim were brought against him for an illegal search, his late arrival after Condlin had already begun the search would not be enough to protect him because "[p]robable cause cannot be imputed from officers who do not have probable cause to begin with."  *Bacote v. Riverbay Corp.*, No. 16-CV-1599, 2017 WL 11567934, at *10 (S.D.N.Y. Nov. 8, 2017).  But all the Complaint supports here, at most, is a claim for failure to intervene in Condlin's search.

*Fitzsimmons*, 509 U.S. 259, 273 (1993).  That extends to holding a defendant's property as evidence pending the defendant's prosecution.  *Flagler v. Trainor*, 663 F.3d 543, 550 (2d Cir. 2011) ("[A] prosecutor is absolutely immune for withholding/preserving evidence to be used in connection with a criminal prosecution, and that immunity extends throughout a subsequent appeal.").  However, cases in this and other Circuits suggest that in managing "the post-trial disposition" of personal property that was "not used as evidence that the State did not intend to keep," a prosecutor acts as an "*administrator*, not as an advocate."  *Lavicky v. Burnett*, 758 F.2d 468, 476 (10th Cir. 1985) (emphasis added) (citation and quotation marks omitted); *see also Maloney v. Cnty. of Nassau*, No. 03-CV-4178, 2010 WL 3940456, at *4 (E.D.N.Y. Sept. 30, 2010) ("Without factual allegations as to [the prosecutor's] necessity of preserving the evidence for future use, [her] retention of plaintiff's property can most logically be deemed an administrative function."), *aff'd*, 500 F. App'x 30 (2d Cir. 2012) (summary order); *Thompson v. Walbran*, 990 F.2d 403, 404 (8th Cir. 1993) ("We also conclude that [the defendant] is entitled to absolute prosecutorial immunity for retaining [the plaintiff's] property because it was important evidence and, if [the plaintiff] succeeded on direct appeal . . . it would be needed at trial."); *Coleman v. Turpen*, 697 F.2d 1341, 1346 (10th Cir. 1982) ("[I]n managing the post-trial disposition of seized property not used as evidence that the State did not intend to keep—as evidenced by its acquiescence in the sale—[the defendant] was acting as an administrator, not as an advocate." (footnote omitted)).  While a prosecutor might be entitled to qualified immunity for any role in the disposition of such property, she would not be entitled to absolute immunity.  *Lavicky*, 758 F.2d at 476.

Under this standard, Plaintiff has no claim against the DCDAO for the deprivation of his money until the end of his prosecution, "which lasted approximately one year," (AC ¶ 34), after

17

which, per the Amended Complaint, it was returned to him, (*see id.* ¶ 39 ("Defendant Condlin conducted a seizure of United States currency . . . . As a result, Plaintiff suffered a deprivation of his property for approximately *one year*." (emphasis added)). And Plaintiff has no claim against the DCDAO for the seizure and retention of his marijuana, (*see id.* ¶ 43), because, as discussed above, it was contraband.

That leaves the cigarettes, which were taken from Plaintiff and have not been returned to him although his prosecution has long concluded. (*Id.* ¶ 45.) But the claim still fails, first, because Plaintiff brought it against the DCDAO. Courts in this district have held that county district attorneys' offices do not have the capacity to sue or be sued as a matter of New York law because they have no distinct legal existence apart from their District Attorneys. *See Michels v. Greenwood Lake Police Dep't*, 387 F. Supp. 2d 361, 367 (S.D.N.Y. 2005) ("Following the *Gonzalez* and *Steed* decisions in which a § 1983 claim was made against a district attorney's office and dismissed based on it not being a suable entity, this Court finds that the instant D.A.'s office is not a suable entity." (citing *Gonzalez v. City of New York*, No. 98-CV-6081, 1999 WL 549016, at *1 (S.D.N.Y. July 24, 1999) ("Under New York law, the [District Attorney's Office] does not have a legal existence separate from the District Attorney himself."), and then citing *Steed v. Delohery*, No. 96-CV-2449, 1998 WL 440861, at *1 (S.D.N.Y. Aug. 4, 1998))); *see also Barreto v. Cnty. of Suffolk*, 455 F. App'x 74, 76 (2d Cir. 2012) (summary order) ("The defendants were entitled to prosecutorial immunity, or, in the case of the Suffolk County District Attorney's Office, was not an entity capable of being sued." (citations omitted)). So, Plaintiff's § 1983 claim for the property held beyond his prosecution would lie not against the DCDAO, but could lie either (1) against an individual prosecutor in the DCDAO or the District Attorney (assuming qualified immunity would not bar it), *see Maloney*, 2010 WL 3940456, at *5 (holding

18

District Attorney sued individually was not absolutely immune from similar property claim, but was protected by qualified immunity), or (2) against Dutchess County on a *Monell* theory "if the prosecutors' constitutional violations were caused by an 'official municipal policy or custom,'" *Rodriguez v. City of New York*, 607 F. Supp. 3d 285, 298 (E.D.N.Y. 2022) (citation omitted).

Even if the DCDAO were suable or a proper defendant had been named in its stead, the Court would reach the same result. As the Court explained above, Plaintiff has not alleged that any process available to him in New York's state courts to redress his property deprivation would have been unconstitutionally insufficient. *See Forman*, 1994 WL 708150, at *1; *Harris*, 2018 WL 4471631, at *10.[7] Here, for example, "[p]ursuant to Administrative Code § 14–140(c), a person who has been arrested may apply to a judge of the criminal court for an order directing the release of property 'alleged to have been feloniously obtained or to be the proceeds of crime' . . . where the court is satisfied from the evidence presented: 1) that 'the person arrested is innocent of the offense alleged; and 2) that the property rightfully belongs to him or her.'" *People v. Sash,* 753 N.Y.S.2d 295, 298 (Crim. Ct. 2002). Plaintiff has alleged that "[d]uring the time that the criminal charges were pending" he asked for the cigarettes back, (*see* AC ¶ 34), but has not suggested through what sort of proceeding or whether he sought their return *after* the trial judge had made the requisite findings—as explained above, while they were being held for potential use as evidence, prosecutors were absolutely immune from an action for their return.

---

[7] That Plaintiff alleges he asked for his property back from the court in which his prosecution took place during the prosecution, and did not get it back then, (Pl.'s Opp. 9), is not enough, since prosecutors were within their rights to retain it during that time for use as evidence unless Plaintiff alleges he attempted the requisite process for getting it back, which he has not. *See Sash*, 753 N.Y.S.2d at 297–98 (describing how defendants may seek the return of their property seized pending state court prosecution); *Flagler*, 663 F.3d at 550 (holding "a prosecutor is absolutely immune for withholding/preserving evidence to be used in connection with a criminal prosecution").

*See Flagler*, 663 F.3d at 550.  And Plaintiff alleges nothing about why that process was insufficient, even if it did not work out in his favor.  *See Levola v. Fischer*, No. 09-CV-0833, 2010 WL 11602538, at *16 (N.D.N.Y. Sept. 29, 2010) ("As alleged in the complaint, a 'meaningful postdeprivation remedy for the loss' was available to plaintiff and was utilized by him. The fact that plaintiff was not successful on that claim does not give rise to a cognizable claim for the violation of his constitutional rights."); *Tsabbar v. Eason*, No. 04-CV-10215, 2006 WL 3755178, at *3 (S.D.N.Y. Dec. 21, 2006) ("Plaintiff had—and indeed pursued— opportunities in state court to oppose the . . . [o]rder that led to his [property deprivation]. That Plaintiff was not successful does not *ipso facto* implicate a lack of due process." (alterations adopted, quotation marks and citation omitted)).  And even if the Court construed Plaintiff's argument as saying he did seek the return of his property pursuant to *Sash*, and that procedure was insufficient, he also could have filed an Article 78 proceeding to challenge the retention of the cigarettes and does not allege that process was insufficient, either.  *See Boyle v. Kelley,* 365 N.E.2d 866, 867 (N.Y. 1977) (holding a property owner may seek return of property seized by law enforcement in an Article 78 proceeding); *see also Abdullah v. NYPD 30th Precinct*, No. 24-CV-0137, 2024 WL 325385, at *4 (S.D.N.Y. Jan. 29, 2024) (citing, *inter alia*, *Boyle* in holding that plaintiff "fail[ed] to state a claim under Section 1983 that Defendants deprived him of his property without due process" because plaintiff had not alleged "he has pursued any of these state remedies, nor any facts showing that these remedies are inadequate"); *Maxwell v. City of New York*, No. 25-CV-04372, 2026 WL 42769, at *3 (S.D.N.Y. Jan. 7, 2026) (same).

Accordingly, the Court must dismiss Plaintiff's claims against the Dutchess County District Attorney's Office.

5.  Claims Against State of New York

Plaintiff's sixth cause of action is against the State of New York, generally arguing New York failed to supervise and train police officers and had a custom of allowing them to use excessive force.  (*See* AC ¶¶ 46–57; Pl.'s Opp. 3 ("Plaintiff reiterates that he is bringing a claim against the State of New York based on the State's failure to properly train its employees.")) However, Plaintiff cannot bring this § 1983 claim against the state of New York.  "States are generally 'immune from suit' under 'the doctrine of sovereign immunity,'" because "the states 'entered the Union with their sovereign immunity intact, unlimited by Article III's jurisdictional grant.'"  *Silva v. Farrish*, 47 F.4th 78, 84 (2d Cir. 2022) (first quoting *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021), and then quoting *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011)); *see also* U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.").  No exception to that general rule applies here.  *See Howlett v. Rose*, 496 U.S. 356, 265 (1990) ("[T]he State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal court or state court."); *Jordan v. New York*, 343 F. Supp. 2d 199, 202 (W.D.N.Y. 2004) ("It is well-settled that states are not 'persons' under § 1983, and thus Eleventh Amendment immunity is not abrogated by that statute." (citation omitted)).

"Therefore, the State of New York is entitled to sovereign immunity, and all claims against the State of New York are dismissed."  *Jordan*, 343 F. Supp. 2d at 202.

### 7.  Remaining claims

Defendants also move to dismiss "Plaintiff's false arrest and malicious prosecution claims."  (Defs.' Mem. 8–10.)  Although the Court construed Plaintiff's *first* Complaint as

21

bringing these claims and the Court dismissed them, (*see* MTD Order 18–20), Plaintiff's Amended Complaint, which replaces his original one, does not bring these claims and the Court cannot interpret it as doing so. *See Bridges v. Corr. Servs.*, No. 17-CV-2220, 2020 WL 6899695, at *2 (S.D.N.Y. Nov. 24, 2020) ("remind[ing]" pro se plaintiff "that each time he files an amended complaint, the most recent amended complaint supersedes the preceding complaint(s)," so plaintiff "cannot argue that his claims asserted in an amended complaint survive a motion to dismiss because of allegations that he only asserted in the preceding complaint"). The Court cannot dismiss a claim that is not made.

### III.  Conclusion

For the foregoing reasons, the Court grants Defendant's Motion to Dismiss as to all of Plaintiff's claims except his claim against Condlin in his individual capacity for the unlawful search of Plaintiff's person, vehicle, and backpack. "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *cf.* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Because Plaintiff has already been granted leave to amend and the Court previously dismissed his claims without prejudice for failure to prosecute, (*see* Dkt. No. 23), the Court grants leave to amend as to the dismissed claims only once more. Failure to file an amended Complaint within 30 days will result in the dismissal of the claims dismissed in this Order *with* prejudice. The Clerk of Court is respectfully directed to terminate the pending motion (Dkt. No. 42) and mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

DATED:     March 27, 2026
           White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

22